"O"

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| AURORA RAMOS,<br>Plaintiff,<br>v.<br>JO ANNE B. BARNHART, Commissioner of the Social Security Administration,<br>Defendant. | Case No. CV 05-00410-MLG<br>MEMORANDUM OPINION AND ORDER |

**I. <u>Procedural History</u>**

This is an action for judicial review of the Defendant Commissioner's final decision denying Plaintiff's application for Supplemental Security Income benefits under Title XVI of the Social Security Act. 42 U.S.C. § 1381, *et seq*. For the reasons stated below, the final decision of the Commissioner is affirmed.

Plaintiff was born on November 12, 1934, and was 59 years old at the time of the 2003 administrative hearing. (Administrative Record ("AR") at 483). She never attended school and is unable to speak, read, or write in English. (*Id.*). She has worked as a

sprinkler system assembler and as a packager of aluminum cans. (AR at 23, 483-85).

Plaintiff filed an application for SSI benefits on September 29, 2000. (AR at 55-67). She alleges that she has been disabled and unable to work since May 9, 1999, owing to depression, arthritis in her feet, severe headaches, insomnia, blurry vision, and high blood pressure. (AR at 56). The application was denied initially and on reconsideration. (AR at 36-39, 41-44).

A *de novo* hearing was held on May 9, 2003 before Administrative Law Judge ("ALJ") Dennis T. Bennett. (AR at 480-91). Plaintiff, represented by counsel, and with the assistance of an interpreter, testified at this hearing. Plaintiff testified that she had the ability to sit for four hours, stand for one hour, and walk three blocks. (AR at 488-89). She also testified that she suffers pain in her back, neck, shoulders, and hands, as well as swelling in her feet. (AR at 486). She identified headaches as an additional factor limiting her capacity to engage in work-like activity. (AR at 487).

In a decision dated May 30, 2003, the ALJ determined that Plaintiff was not disabled. The ALJ made the following findings concerning Plaintiff's impairments:

> "mild degenerative disc disease of the cervical and lumbar spine areas which, in combination have more than a minimal effect upon her ability to perform basic work related activities. She is obese but there is no evidence that such adversely affects any body system as analyzed under SSR 00-3p. She has hypertension, but the record shows that when she takes her medications as prescribed, her blood pressure is controlled. Her obesity, hypertension and Heberden's nodes are nonsevere, individually,

and in combination with her other impairments, severe and nonsevere. Although there is no longitudinal treatment record establishing any severe mental impairment, based upon the assessments of the DDS psychiatrists, I find that she has anxiety and depressive disorders which are, also, not severe, individually, or in combination." (AR at 24-25).

The ALJ further found that these impairments failed, both singly or in combination, to meet or medically equal any of the impairments contained in the listings or to be equal in severity to a listing. 20 C.F.R., Part 404, subpt. P, App. 1. (AR at 25). The ALJ determined that Plaintiff has the residual functional capacity ("RFC") to perform work-related activities at the medium exertional level. (*Id.*). In so doing, he also found Plaintiff not credible. (*Id.*). Based on these findings, the ALJ concluded that Plaintiff could return to her past relevant work. (*Id.*).

Plaintiff filed a Request for Review with the Appeals Council which was denied on November 19, 2004. Plaintiff then commenced this action for judicial review. In the parties' joint stipulation of issues and contentions, Plaintiff raises three claims of error. She contends that the ALJ erred, first, in determining that her mental impairment was not a severe impairment; second, in finding that she had the residual functional capacity for medium work; and third, in finding her testimony not credible. (Joint Stipulation ("JS") at 3). This matter is ready for decision.

\\

\\

\\

\\

**II. Standard of Review**

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's final decision to deny benefits. The findings and decision should be upheld if they are free from legal error and are supported by substantial evidence based on the record as a whole. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001). Substantial evidence means such evidence as a reasonable person might accept as adequate to support a conclusion. *Richardson*, 402 U.S. at 401; *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1996). It is more than a scintilla, but less than a preponderance. *Reddick*, 157 F.3d at 720. To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Id.* "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner. *Id.* at 720-21.

**III. Discussion and Analysis**

**(A) The ALJ Properly Found Plaintiff's Mental Impairment Non-Severe**

Plaintiff's contends that the ALJ erroneously found Plaintiff's mental impairment to be non-severe. According to Plaintiff, the ALJ failed to give adequate consideration to the opinion of agency reviewing physician Glenn Ikawa, M.D. Plaintiff's claim lacks merit.

The existence of a severe impairment is demonstrated when the evidence establishes more than a minimal effect on an individual's ability to do basic work activities. *Smolen v. Chater*, 80 F.3d 1273,

1290 (9th Cir. 1996); 20 C.F.R. §§ 404.1521(a), 416.921(a).[1] Here, the ALJ found that there was no medical evidence establishing a severe mental impairment. While he found that Plaintiff had been diagnosed with anxiety and depressive disorders, he found them to be non-severe both individually or in combination. This finding is supported by substantial evidence.

On January 6, 2001, Lawrence Ogbechie, M.D., a board-eligible psychiatrist, examined Plaintiff at the request of the Department of Social Services for a disability evaluation. He described Plaintiff's mood as sad and dysphoric, with mild emotional expression of affect. (AR at 154.) He diagnosed depressive disorder, not otherwise specified, moderate psychosocial stressors, and a global assessment of functioning ("GAF") of 60.[2] (AR at 154.) Dr. Ogbechie's report notes that Plaintiff "has no restrictions of her daily activities, and has no difficulty in maintaining social functioning." (AR at 155). While he found some difficulty with concentration, there were no episodes of emotional deterioration and Plaintiff was capable of understanding, remembering and carrying out simple instructions. *Id.* The prognosis was deemed to be good.

\\

[1] The regulations define "basic work activities" as "the abilities and aptitudes necessary to do most jobs", which include physical functions such as walking, standing, sitting, pushing, carrying; capacities for seeing, hearing and speaking; understanding and remembering simple instructions; responding appropriately in a work setting; and dealing with changes in a work setting. 20 C.F.R. § 404.1521(b).

[2] A GAF score of 51 to 60 indicates "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." DSM-IV at 34.

Wallace Campbell, M.D., a non-examining agency physician completed a psychiatric disability determination form on February 20, 2001, and diagnosed Plaintiff with depression, not otherwise specified. (AR at 171.) He concluded that the impairment was not severe. On March 1, 2001, Barbara Strong, M.D., of La Puente Valley Mental Health Center, conducted an initial psychiatric evaluation in which she diagnosed Plaintiff with generalized anxiety disorder and five psychosocial stressors. (AR at 146.) Dr. Strong assessed Plaintiff with a GAF score of 50.[3] (AR at 146.)

On July 24, 2001, Glenn Ikawa, M.D., another agency reviewer, reviewed the record and completed a disability determination form in which he diagnosed Plaintiff with moderate limitations in her ability to understand and remember detailed instructions as well as the ability to carry out detailed instructions. (AR at 184.) He also diagnosed Plaintiff with generalized anxiety. (AR at 182.) Dr. Ikawa did not endorse the "not severe" assessment and instead found a residual functional capacity assessment necessary. (AR at 188.) After performing that assessment, he concluded only that Plaintiff had a mild difficulty in maintaining concentration, with no additional limitations of any kind. (AR at 198.)

On December 10, 2002, Dr. Strong again assessed the record and found Plaintiff's affective disorders non-severe. (AR at 441.)

\\

---

[3] According to the *Diagnostic and Statistical Manual of Mental Disorders*, a GAF of 41-50 indicates "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 34 (4th ed., text rev. 2000).

In his decision, the ALJ considered the reports of Drs. Strong, Ogbechie, and Campbell, but failed to mention that of Dr. Ikawa. The ALJ should have considered Dr. Ikawa's opinion and state the weight assigned to it. 20 C.F.R. § 416.927(f). However, the ALJ's error was harmless because the reports of the examining physicians and the other agency reviewing physician provided substantial support for the finding that Plaintiff's psychological impairment was non-severe. *Curry v. Sullivan*, 925 F.2d 1129, 1131 (9th Cir. 1990) (harmless error rule applies to review of administrative decisions regarding disability). Thus, the ALJ's decision that Plaintiff's mental impairment was non-severe was supported by substantial evidence.

**(B) <u>The ALJ Properly Assigned Plaintiff a Medium Residual Functional Capacity</u>**

Plaintiff claims that the ALJ erroneously assigned Plaintiff a residual functional capacity ("RFC") at the medium exertional level. According to Plaintiff, the ALJ's finding is not reasonable in light of Plaintiff's degenerative disc disease in the cervical and lumbar spine, back and neck pain, and bilateral arm and hand pain. (AR at 228). Furthermore, Plaintiff contends that the ALJ failed to specifically consider the impact of obesity on Plaintiff's ability to engage in the physical requirements of medium work. Plaintiff's claim lacks merit. The ALJ properly assigned Plaintiff a medium RFC and specifically considered the impact of her obesity.

In his decision, the ALJ found that Plaintiff has mild degenerative disc disease of the cervical and lumbar spine areas which, in combination, more than minimally affected her ability to

perform basic work related activities.[4] (AR at 24, 26.) The ALJ found that she could perform work at the medium exertional level, which requires the ability to lift up to fifty pounds at a time with frequent lifting and carrying of objects weighing up to twenty-five pounds.[5] 20 C.F.R. § 404.1567(c). The ALJ's finding was supported by substantial evidence and accounted for Plaintiff's obesity.

On January 5, 2001, Concepcion Enriquez, M.D., a board eligible internist, conducted an internal medicine consultation. (AR at 148-51). Plaintiff's blood pressure was elevated, but she told the doctor that she had not taken her medication that day. (*Id.*). Range of motion in the spine, shoulders, wrists and hands were within normal limits. There was tenderness in the lumbosacral spine area but no limitation in the range of motion. Muscle tone was normal and there was no atrophy. Sensation was intact, gait was within normal limits and there was no sign of radiculopathy. Dr. Enriquez stated that Plaintiff could perform activities at the medium exertional level. (AR at 151). X-ray reports signed by Stephen Kanter, M.D., show only mild degenerative changes of the lumbar and cervical spine areas as well as normal hands, feet, and shoulders. (AR at 420-23).

The ALJ relied upon this report in making his finding. He rejected a physical capacity evaluation submitted by counsel on January 8, 2003, which checked off boxes indicating that Plaintiff could not carry any weight and was unable to stand, walk or sit for

---

[4] The ALJ found Plaintiff's other impairments non-severe, individually or in combination with her other impairments, but did not mention any specific reasons for this finding. (AR at 24-25.)

[5] Additionally, the ALJ's finding of medium exertional RFC was predicated upon what may be an erroneous rejection of Plaintiff's testimony which is discussed in Part C, below.

more than one hour in an eight hour day, on the basis that it was contrary to all of the other medical evidence in the record.[6] (AR 467). This finding was not erroneous and based upon the medical record showing only mild degenerative changes without other significant objective findings. The RFC evaluation was supported by substantial evidence.[7]

**(C) <u>The ALJ's Credibility Determination Is Substantially Supported</u>**

Plaintiff contends that the ALJ failed to offer specific and cogent reasons for discounting her subjective complaints. In rejecting Plaintiff's credibility, the ALJ found, first, that the objective medical evidence failed to substantiate disability; second, that her treatment history was not commensurate with her alleged impairments; third, that Plaintiff exaggerated her symptoms in that her allegations of almost complete incapacity were at odds with the observations of various examining physicians; and fourth, that the record demonstrated inconsistencies between Plaintiff's own statements regarding the extent of her daily activities. (See AR at 25).

Under the governing legal standard, unless there is evidence that a claimant is malingering, the ALJ can only reject the claimant's subjective testimony regarding the severity of his symptoms by making "specific findings stating clear and convincing

---

[6] Indeed, in reviewing this document the court cannot determine whether it was prepared by the doctor, an assistant or the Plaintiff. There is a note on top stating: "Please fill out & give patient + SSI for Judge".

[7] The Court also notes that contrary to Plaintiff's contention, the ALJ did consider Plaintiff's obesity and found that there was no evidence that Plaintiff suffers any major adverse affects from her obesity. (AR at 24).

reasons for doing so". *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996); *Dodrill v. Shalala*, 12 F.3d 915, 917-18 (9th Cir. 1993). Under this standard, it is not sufficient for the ALJ to make general findings about the claimant's testimony. *Dodrill*, 12 F.3d at 918. Rather, the ALJ must specify which testimony is not credible and state the specific evidence that suggests the testimony is not credible. *Id.*

In determining credibility, the ALJ may consider "ordinary techniques of credibility evaluation," such as inconsistent statements, unexplained failures to seek treatment, and the daily activities of the claimant. *Smolen*, 80 F.3d at 1284. The ALJ must also consider the "observations of treating and examining physicians and other third parties regarding . . . the nature, onset, duration, and frequency of the claimant's symptom; precipitating and aggravating factors; functional restrictions caused by the symptoms; and the claimant's daily activities. *Id*.

In this case, as set forth above, the ALJ provided numerous reasons and examples as to why he found Plaintiff not to be credible It suffices to point out that each of the ALJ's reasons is substantially supported. First, as set forth more fully above, the objective medical evidence does not fully substantiate Plaintiff's claimed impairments. While a lack of objective medical evidence cannot form the sole basis for discounting a claimant's testimony, "it is a factor the ALJ can consider in his credibility analysis." *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005). In his decision, the ALJ pointed out the lack of clinical or other evidence supporting the degree of limitation claimed by Plaintiff.

\\

Second, the ALJ's finding that Plaintiff's treatment history was not commensurate with the alleged severity of her impairments is also supported. The ALJ noted the conservative, routine treatment given to her by treating physicians which did not include any hospitalizations or referrals to specialists. This basis for discounting Plaintiff's credibility is legitimate and substantially supported. *See, e.g., Flaten v. Sec'y of Health and Human Services*, 44 F.3d 1453, 1464 (9th Cir. 1995)(minimal treatment supported ALJ's decision to discredit testimony).

Finally, the ALJ's finding that Plaintiff gave inconsistent statements is substantially supported in the record. In a Daily Activities Questionnaire, Plaintiff stated that she cooks every day, does household chores, goes for walks and appointments, does laundry, shops and cleans. (AR at 99-102). While these statements would not support a finding of an ability to perform work at a specific exertional level, a claimant's inconsistent statements regarding her daily activities is a legitimate basis for discounting her credibility. *Smolen* at 1284. These statements are clearly inconsistent with her testimony at the hearing indicating an ability to stand for only one hour and to walk only three blocks. (AR 488). In sum, the ALJ's credibility determination was substantially supported, and Plaintiff's claim is without merit.

## **IV. Conclusion**

For the reasons stated above, the Court finds that the ALJ's decision was supported by substantial evidence. Plaintiff's motion for summary judgment is **DENIED**. The Defendant's motion for summary judgment is **GRANTED**. It is **ORDERED** that judgment be entered for the

Defendant and that this matter be dismissed with prejudice.

Dated: December 19, 2005

*/S/ Marc L. Goldman*

Marc L. Goldman
United States Magistrate Judge